TotteN, J.,
delivered tbe opinion of the court.
The prisoner was charged by indictment in the circuit court of Overton, with the murder of Benj. B. Bay. He was acquitted of the murder, was convicted of manslaughter, and sentenced to imprisonment in the Penitentiary for eight years.
Prom the judgment therein, he ajjpealed in error to this court.
It appears that the prisoner and Bay, the deceased, resided a mile apart; each of them desired to purchase a tract of land that lay between them; prisoner became the purchaser, at which Bay became deeply offended. He made frequent threats against the prisoner; threatened to whip him, to make him take the cliffs; that he would have the land or have blood. Bay, when sober; was peaceable, but was of quick temper, determined courage, overbearing disposition, and great physical strength. He sometimes carried weapons; had a bowie-knife and revolver, but was never known to use them.
On the contrary, it appears that the prisoner, though of good size, is of weak and feeble health; affected by a disease in the back and otherwise; that he is of pacific disposition, and had at a former time passively yielded, at his own house, to the turbulence and abuse of Bay. Bay’s threats and character were well known to the prisoner. On the day of the last Presidential election, the prisoner, in order to avoid Bay, did not go where he and Bay usually voted, but started to a ballot box in another district, He called at Hampton’s on business ; Bay came in, was spoken to civilly by the pri *409 soner, wbo immediately left tlie bouse. He was pursued by Bay, wbo denounced bim, and struck bim three blows witb bis fist, wben tbe prisoner stabbed bim in tbe side witb a knife, and of tbis wound Bay died tbe third day thereafter. Such is tbe general character of tbe case.
His Honor, tbe Circuit Judge, instructed tbe jury in these words: “ If tbe defendant struck tbe deceased tbe blow witb tbe knife, witb a deadly intent produced by anger, tbe killing would be murder in tbe second degree. But if tbe defendant was leaving tbe deceased, and was by bim accosted, and tbe deceased commenced inflicting blows upon bim, tbe defendant, and excited by sudden beat,' and without intending to take life, be stabbed tbe deceased, of which be died, such killing would be manslaughter.”
This instruction is erroneous. - If tbe prisoner used tbe knife “ witb deadly intent produced by anger,” tbe homicide is not murder, for it wants tbe element of malice. We are not to infer malice from tbe “ deadly intent” merely, for that may exist in a case of self-defense, asw here one, from evident necessity, wilfully kills another to save bis own life. Much less can wo infer it where the “intent is produced by anger,” for if that were sudden and upon reasonable provocation, tbe killing would not be murder. And so, in reference to manslaughter tbe same idea prevails in tbe charge ; that is, that tbe killing would not be tbis offense if the prisoner “intended to take life,” though it be on sudden impulse and passion excited upon reasonable provocation. But manslaughter may be voluntary, as where, upon a sudden quarrel two persons fight, and *410 one of them kills the other. We are to presume that tbe intention accorded with tbe act; but if the intention and act were the result of impulse and passion, excited upon sudden and adequate provocation, the idea of malice is repelled, and the killing is only manslaughter. We are not to suppose that a person thus excited is deprived of all reason, so as to be incapable of purpose or intention. That is not the state of the mind; but being greatly excited upon sufficient cause, he is impelled by a sudden motive of revenge, and that excludes the idea of malice. The judge next proceeds to instruct the jury upon the rights of self-defense, not material to be here noticed; but in view of the whole case, we must say that we are not satisfied with its result. There is no question, but that it is a case of manslaughter or self-defense, and we are to infer from the charge and the verdict, that the jury were of the opinion that the prisoner did not intend the death of his assailant, but a less injury. We cannot say- that the error we have noticed had no injurious influence upon the verdict, either as to the guilt or the degree of punishment. It is not always safe to speculate as to the effect of such errors, and to assume that the accused was not injured by them. He was entitled to a correct and distinct exposition of the law as to manslaughter and self-defense, and the proper distinctions which apply to those offenses.
As to the facts, they present a strong case of unprovoked wrong and violence upon the person of the prisoner, and leave the -mind in doubt whether he was not justified in repelling the attack in the only manner which seemed to be in his power. We think it proper *411 that the case be again, submitted to a jury, and we do so without comment upon the evidence. Let the judgment be reversed and the prisoner be remanded for another trial.
Judgment reversed.